## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MALIBU MEDIA, LLC,<br><br>             Plaintiff,<br><br>   v.<br><br>ZENON NOWOBILSKI,<br><br>             Defendant. | No. 15–cv–2250 (KM)(MAH)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the Court on the unopposed motion of plaintiff Malibu Media, LLC, for default judgment against defendant Zenon Nowobilski. Malibu Media alleges that Mr. Nowobilski infringed on the copyrights owned by Malibu Media for 132 movies. For the reasons expressed below, I grant in part and deny in part the motion for default judgment.

## I.   BACKGROUND

The plaintiff, Malibu Media, is a California limited liability company that owns the copyrights to adult films that it makes available on its website. (Amended Complaint ("Am. Compl.") ¶¶ 2, 4, 9; *see* Exs. A–B (ECF No. 8)) The defendant, Zenon Nowobilski, is an individual allegedly residing in New Jersey. (*Id.* ¶ 10)

Malibu Media hired an investigator, IPP International UG, to investigate unauthorized copies of its works on the BitTorrent file distribution network and trace the infringing distributors. (*Id.* ¶¶ 6–7, 18–24) BitTorrent is a peer-to-peer file sharing system used for distributing large amount of data, including digital copies of movies. (*Id.* ¶ 11) To distribute a large file, BitTorrent breaks a file into many small pieces, referred to as "bits." (*Id.* ¶ 13) These bits are exchanged

1

among users in the network, and then once the recipient receives all of the bits of a file, the BitTorrent software will reassemble the bits so that the file can be opened and used. (*Id.* ¶¶ 13–14) Each bit is assigned a unique cryptographic hash value ("bit hash") that identifies the bit and ensures that it is properly routed. (*Id.* ¶¶ 15–16) The entire digital file is also given a hash value ("file hash"), which acts as an identifier and is used by the BitTorrent software to determine when the file is complete and accurate. (*Id.* ¶ 17)

IPP International allegedly downloaded "one or more bits" at six different times through a direct connection with internet protocol ("IP") address 69.122.27.123. (*Id.* ¶¶ 18–19, Ex. A) IPP International allegedly downloaded bits at the following times and from media files with the following file hashes:

|  | Hit Date | File Hash |
|---|---|---|
| File #1 | 02/22/2015 01:01:07 | 4CBE8879EDEEC66D681CC570CD3434B1CE7788AA |
| File #2 | 02/14/2015 20:35:45 | 1AC522C5FE11B932CFB6C8EE9F1A2AFEDF8447D2 |
| File #3 | 02/03/2015 00:39:40 | 1AC522C5FE11B932CFB6C8EE9F1A2AFEDF8447D2 |
| File #4 | 01/25/2015 05:59:37 | 2F4771020A9701851F7D58DDEC8A77D916B55650 |
| File #5 | 08/05/2014 01:41:45 | 418612CDA063819CF12372355DCD2C2573FD0337 |
| File #6 | 08/05/2014 00:56:48 | 1247492A24A5E4FC9A36EAADE5308C7AFF6C49AF |

(*Id.* at Ex. A, ¶ 24) They then downloaded full copies of each media file associated with the file hash from BitTorrent and confirmed that each of those files contained a digital copy of a movie that is Malibu Media's copyrighted work. (*Id.* ¶ 23; *see* Ex. B)

File #1 is a zip folder which contains 127 of Malibu Media's works. (*Id.* ¶ 22; *see* Ex. B) The other files contain a single work each. (*Id.* Ex. A) Files #2 and #3 have the same file hash, indicating that IPP International downloaded bits from the same work on different dates. (*Id.* Ex. A)

Malibu Media filed its original complaint on March 3, 2015, essentially against the IP address, using a fictitious name for the defendant. (ECF No. 1) To determine in which jurisdiction it should file suit, Malibu Media alleges it used "proven" geolocation technology to trace the IP address to a physical address in this district. (Am. Compl. ¶ 6) Malibu Media then moved under Federal Rule of Civil Procedure 26(d)(1) to serve a subpoena on Optimum Online, the provider of the IP address, to force it to reveal the identity of the owner of the allegedly infringing IP address. (ECF No. 4) Magistrate Judge Michael A. Hammer granted limited early discovery, but recognized "that the IP account holder might not be personally responsible for the alleged infringement. However, the IP account holder might possess information that assists in identifying the alleged infringer, and thus that information is discoverable under the broad scope of Rule 26." (ECF No. 6)

On October 15, 2015, Malibu Media then filed the amended complaint naming Mr. Nowobilski as the defendant and owner of the IP address. Malibu Media alleged one claim for relief against Nowobilski: direct infringement of Malibu Media's right to reproduce, redistribute, perform, or display copyrighted works, in violation of 17 U.S.C. §§ 106 and 501. (Am. Compl. ¶ 33) Malibu Media requested a permanent injunction against Mr. Nowobilski from continuing to infringe its works, an order that Nowobilski delete all digital media files relating to Malibu Media's works, an award of statutory damages for each infringed work, and an award of attorney's fees and costs. (*Id.* at 8–9)

A summons was issued and Mr. Nowobilski was served on October 22, 2015. (ECF Nos. 11–12) On December 3, 2015, Malibu Media requested that the Clerk enter default against Nowobilski. (ECF No. 13) The clerk filed an entry of default on the same day. (ECF No. 14) Malibu Media filed its motion for default judgment on December 14, 2015. (ECF No. 15) Malibu Media proposes that the Court order Nowobilski to pay $99,000 in statutory damages under 17 U.S.C. § 504(c)(1) and $1,657 in attorney's fees and costs under 17 U.S.C. § 505 for a total of $100,657.00, as well as enjoin further infringement of its copyrighted works. (Proposed Order (ECF No. 15–6))

## II.   DISCUSSION

Malibu Media is reputedly the biggest filer of copyright litigation in the country. *See* Gabe Friedman, *The Biggest Filer of Copyright Lawsuits? This Erotica Web* Site, New Yorker, May 14, 2014, *available at* www.newyorker.com/business/currency/the-biggest-filer-of-copyright-lawsuits-this-erotica-web-site. At any rate, it is a prolific filer. In 2014, Malibu Media filed 1,780 copyright cases, over 41.5% of all copyright suits filed nationwide. Matthew Sag, *IP Litigation in U.S. District Courts: 1994-2014*, 101 Iowa L. Rev. 1065, 1078 & n.43 (2016). A search for dockets with "Malibu Media" as a party revealed over 500 cases filed in this district alone since 2012. Approximately 39 of these have been assigned to my docket, and about two thirds of those were closed within six months of being filed. No new cases have been filed since March 31, 2016.[1]

As early as 2012, courts around the country were noting "the growing concern about unscrupulous tactics used by certain plaintiffs, particularly in the adult films industry, to shake down the owners of specific IP addresses from which copyrighted adult films were allegedly downloaded." *Malibu Media, LLC v. Does 1-5*, Civ No. 12–2950, 2012 WL 2001968, at *1 (S.D.N.Y. June 1, 2012); *see also, e.g., Malibu Media, LLC v. Doe*, Civ No. 15–4369, 2015 WL 4092417, at *2 (S.D.N.Y. July 6, 2015) ("In 2012, judges in the Southern

---

[1] The reason for the lull may be the legal dispute between Malibu Media and attorney Michael Keith Lipscomb. *See Malibu Media, LLC, v. Lipscomb, Eisenberg & Baker, PL*, Civ No. 16–4715 (C.D. Cal. filed June 28, 2016); *Lipscomb, Eisenberg & Baker, PL, et al, v. Malibu Media LLC*, 2016–014947–CA–01 (Fla. Miami-Dade County Ct. filed June 10, 2016). In Malibu Media's complaint filed in the United States District Court for the Central District of California, Lipscomb's law firm is described as the "general counsel" of its "entire copyright enforcement program." Civ No. 16–4715 (ECF No. 1 ¶ 10) (C.D. Cal. June 28, 2016). Malibu Media alleges that Lipscomb's firm stopped sending them money gained from the myriad copyright lawsuits it filed or had others file on Malibu's behalf. (*Id.* ¶¶ 13–15) Lipscomb allegedly wrote in an email that "Malibu is winding its copyright campaign down because it is no longer profitable." (*Id.* ¶19) Allegedly, no retainer agreement was ever signed with Lipscomb's firm before they set out to flood the nation with copyright actions. (*Id.* ¶¶ 11–12, 32.d, 37–39)

District and across the country began awakening to the danger of copyright trolls, especially in the context of pornography") (collecting cases); *Malibu Media, LLC v. John Does 1 through 10*, Civ No. 12–3623, 2012 WL 5382304, at *4 (C.D. Cal. June 27, 2012) ("The federal courts are not cogs in a plaintiff's copyright-enforcement business model. The Court will not idly watch what is essentially an extortion scheme....").

Recently, some courts have stayed or denied these cases at the subpoena stage. *See, e.g., Malibu Media, LLC v. Doe*, Civ No. 16–1006, 2016 WL 3383830, at *3–4 (N.D. Cal. June 20, 2016) (collecting cases). In the United States District Court for the Northern District of California, Judge William Alsup, who was assigned all Malibu Media cases in that district, *see* Order Reassigning Cases, *Malibu Media, LLC, v. Doe*, Civ No. 15–4195 (ECF No. 7) (C.D. Cal. Sept. 29, 2015) stayed a subpoena over "Malibu Media's failure to include a sworn record on the reliability of its IP address geolocation methodology" and applied the ruling to future and pending requests. *Malibu Media, LLC v. Doe*, Civ No. 16-1006, 2016 WL 3383830, at *3–4 (N.D. Cal. June 20, 2016). In the United States District Court for the Eastern District of New York, Magistrate Judge Steven Locke stayed all of Malibu Media actions in that district pending the resolution of a motion to quash based on, among other reasons, serious questions about the method for identifying allegedly infringing users and about Malibu Media's abusive litigation practices. *E.g.*, Order Staying Cases, *Malibu Media, LLC v. Doe*, Civ No. 15–3504 (ECF No. 12) (E.D.N.Y. October 6, 2015).

## A. Default Judgment Standard

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Thus, before entering default judgment, the Court must determine whether the

"unchallenged facts constitute a legitimate cause of action" so that default judgment would be permissible. *DirecTV, Inc. v. Asher*, Civ No. 03–1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing 10A Wright, Miller, Kane, *Federal Practice and Procedure* § 2688, at 58–59, 63 (3d ed.)).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, Civ No. 12–5825, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013) (citing *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)). However, the Court need not defer to a complaint's conclusions of law, because "a party in default does not admit mere conclusions of law." *Asher*, 2006 WL 680533, at *1 (quoting 10A Wright, Miller, Kane, *Federal Practice and Procedure* § 2688, at 63 (3d ed.)); *accord Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 684 (D.N.J. 2015). Moreover, if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of the allegations. *Simone*, 2013 WL 3772532, at *2.

## B.   Prerequisites for Entry of Default Judgment

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the defendant must have failed to file an answer or otherwise respond to the complaint within the time provided by the Federal Rules, which is twenty-one days. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18–19 (3d Cir. 1985); Fed. R. Civ. P. 12(a).

Service of an individual may be made by personal service, leaving a copy of the summons and complaint at the individual's dwelling or usual place of abode with a person of suitable age and discretion, delivering a copy of the summons and complaint to an agent for service of process, or following state law for serving a summons in an action brought in courts of general jurisdiction where the district court is located or where service is made. Fed. R. Civ. P. 4(e).

Here, the prerequisites for default judgment have been met. The Amended Complaint was filed on October 15, 2015. Malibu Media served Mr. Nowobilski personally on October 22, 2015. (ECF no. 12) Mr. Nowobilski failed to file an answer or otherwise respond to the complaint within twenty-one days of service pursuant to Fed. R. Civ. P. 12(a). The clerk entered default against Nowobilski on December 03, 2015. (ECF no. 14) Accordingly, I am satisfied that the prerequisites to filing a default judgment are met. *See Gold Kist*, 756 F.2d at 18–19.

## C. Three Factor Analysis

After the prerequisites have been satisfied, a court must evaluate the following three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)). Those factors, considered in light of the record of this case, weigh in favor of entry of a partial default judgment.

### 1. Factor 1: Meritorious Defense

As to the first factor, I am of course confined to the skimpy record that is before me. *See Coach, Inc. v. Bags & Accessories*, Civ No. 10–2555, 2011 WL 1882403, at *6 (D.N.J. May 17, 2011) ("Because the Defendants did not respond, the Court cannot determine whether the Defendants had meritorious defenses that are not reflected in the record."). Because thousands of similar cases have been filed, we know there are a number of meritorious defenses that defendants may assert. Those defenses, however, largely depend on the facts of the case and require knowledge specific to the defendant. I cannot simply speculate that there may be facts that a defendant could use to defend himself from this complaint. Instead I will review the complaint to assess whether the factual allegations, taken as true, suffice to plead copyright infringement. *See Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 683 (D.N.J. 2015) ("prior to

7

entering a judgment of default, a court must determine: ... (2) whether the unchallenged facts present a legitimate cause of action") My independent review of the record, accepting the factual allegations as true, suggests that the defendant could mount a meritorious defense as to at least some of the allegedly infringed works.

The amended complaint asserts a cause of action for direct copyright infringement, in violation of 17 U.S.C. §§ 106 and 501. (Am. Compl. ¶ 33) To establish a claim for copyright infringement, a plaintiff must show (1) that he owns a valid copyright; and (2) original elements of its work were copied without authorization. *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002). Malibu Media sufficiently alleges that it owns valid copyrights as to all 132 videos. (*See* Am. Compl. Ex. B) As to the second element, Malibu Media's allegations are sufficient to establish that Nowobilski had unauthorized copies of the single movies in each of files #2–6, but not the 127 movies in file #1.

Malibu Media alleges that its investigator, IPP International, identified the allegedly infringing files through establishing a direct connection with Nowobilski's IP address and downloading "one or more bits" of the six files at six different times. (*Id.* ¶¶ 18–19, Ex. A) Malibu Media does not explain IPP International's process for determining that the downloaded bits came from a specific file. Malibu Media alleges that the bits have bit hashes to identify them and that when the bits are assembled into a file there are file hashes to identify the complete digital media file. (Am. Compl. ¶¶ 15–17) But how they identify the file origin of the few bits they downloaded from Nowobilski is not explicitly pleaded. That said, it is simple to imagine that a downloaded bit can be matched to one work as it contains information taken from that work. Thus, the allegations that IPP International downloaded one bit each from files #2–6, which each contain a single copyrighted movie, and identified that bit as part of an unauthorized copy of their copyrighted work suffices to establish a plausible claim of copyright infringement as to those works.

8

But the allegation that the same size bit also establishes that 127 separate unauthorized copies were on Nowobilski's computer within file #1 requires more factual allegations to explain how one bit can identify separate works. It has not been alleged whether the bit that Malibu Media alleges identifies 127 works is a piece of any one work or pieces of all 127 (or if there is some other method of identification).

The confusion as to how this process identified 127 videos is heightened by Malibu Media's Exhibit B to the complaint, which lists all 132 movies. (Am. Compl. Ex. B) The exhibit has columns including the title of the movies, the copyright registration numbers and the "Most Recent Hit UTC." For files #2–6, the "Most Recent Hit UTC" column corresponds with the "Hit Date UTC" column in Exhibit A. (*Id.* Exs. A, B at 6) These columns refer to the most recent time IPP International allegedly connected with Nowobilski's IP address to download bits from these videos. (*Id.* ¶¶ 18–19, 24) For the 127 videos allegedly in file #1, 124 share the same most recent hit date, but three have different dates. (*Id.* Ex. B at 6) This suggests that it is possible for a downloaded bit to identify fewer movies than the 127 allegedly in the file at one download, or that the file contains different numbers of movies at different times. Either option would refute other factual allegations necessary for Malibu Media to support its claim, namely that a file hash is unique to an entire media file and that these file hashes can be used to extrapolate from one downloaded bit that a person has a full unauthorized copy of a copyrighted work. (*Id.* ¶¶ 17, 21)

As to these 127 videos, I am not satisfied that the complaint establishes that Malibu Media is entitled to judgment.

## 2. Factors 2 and 3: Prejudice to Plaintiffs and Culpability of the Defendants

The second and third factors generally, if not strongly, weigh in favor of default. Nowobilski was properly served on October 22, 2015, but has failed to appear and defend himself. As a result, Malibu Media has been "prevented from prosecuting [its] case, engaging in discovery, and seeking relief in the

normal fashion." *See Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. CIV. 11–624, 2011 WL 4729023, at \*4 (D.N.J. Oct. 5, 2011).

Absent any evidence to the contrary, it is generally true that "the Defendant's failure to answer evinces the Defendant's culpability in [the] default." *Id.* Here, there is some doubt as to whether the person named as defendant is indeed the culpable party. He is identified essentially as the person who corresponds to a certain IP address. Electronically, of course, an IP address connects to a device, not a person, and it is impossible to tell from subscriber information who the device user was. It could be, for example, that someone else in the household (or for that matter someone pirating wireless service) is the actual infringer. That said, there seems to be a good faith basis for naming the particular individual, and the limited knowledge possessed by the plaintiff corresponds to the balanced, carefully limited discovery permitted by Magistrate Judge Hammer. (ECF no. 6) The named defendant could have responded with a denial, but defaulted instead.

Weighing the factors, I find that Malibu Media has sufficiently alleged copyright infringement as to files #2–6, and failed to sufficiently allege copyright infringement as to file #1. I will, therefore, grant in part and deny in part the motion for default judgment against Nowobilski.

## D. Judgment

### 1. Statutory Damages

Malibu Media elects statutory damages under 17 U.S.C. § 504(c)(1). (MDJ Br. 8 (ECF No. 15–1)) That section provides:

> Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

17 U.S.C. § 504(c)(1). The Third Circuit has yet to address it, but other United States Courts of Appeals across the country have held or cited approvingly "the general principle that the total number of awards of statutory damages that a plaintiff may recover in any given action depends on the number of works that are infringed and the number of individually liable infringers, regardless of the number of infringements of those works." *WB Music Corp. v. RTV Commc'n Grp., Inc.*, 445 F.3d 538, 540 (2d Cir. 2006) (internal quotation marks and citations omitted) (collecting cases from the 1st, 2nd, 5th, and DC Circuits); *accord MCA Television Ltd. v. Feltner*, 89 F.3d 766, 770 (11th Cir. 1996). Thus, I will grant only four awards for files #2–6 because files #2 and #3 contain duplicates of the same copyrighted work.

Malibu Media asks for the minimum of $750.00 per work in damages, multiplied by 132 works, for a requested total of $99,000. (MDJ Br. 10) The minimum statutory award is appropriate here. "Courts considering similar infringement actions regarding unauthorized online distribution of copyrighted material have found statutory damages between $750.00 and $2,250.00 per infringing work to be reasonable." *Malibu Media, LLC v. Tsao*, Civ No. 15–6672, 2016 WL 3450815, at *4 (D.N.J. June 20, 2016) (collecting cases). Further, "[c]ourts routinely award minimum statutory damages as part of default judgments in copyright infringement actions." *Arista Records, LLC v. Callie*, Civ No. 07–712, 2007 WL 1746252, at *2 (D.N.J. June 15, 2007) I have already detailed Malibu Media's unscrupulous use of the courts as a profit generating business. *See, e.g., Malibu Media, LLC v. Powell*, Civ No. 15–1211, 2016 WL 26068, at *1 (M.D. Pa. Jan. 4, 2016) (noting "the troubling trend of copyright trolls in this particular film industry, who file mass infringement lawsuits against Doe defendants not to be made whole, but rather as a primary or secondary revenue stream" (internal quotation marks and citations omitted)). Courts throughout the country have granted Malibu Media the minimum statutory damages even when it has requested more. *See, e.g., Malibu Media, LLC v. Redacted*, Civ No. 15–0750, 2016 WL 3668034, at *3-4 (D. Md. July 11,

2016) (collecting cases); *Malibu Media, LLC v. Funderburg*, Civ No. 13–02614, 2015 WL 1887754, at *3-4 (N.D. Ill. Apr. 24, 2015) ($2,250 requested); *Malibu Media, LLC v. Cui*, Civ No. 13–5897, 2014 WL 5410170, at *4 (E.D. Pa. Oct. 24, 2014) (same); *Malibu Media, LLC v. Schelling*, 31 F. Supp. 3d 910, 912 (E.D. Mich. 2014) (same). Thus I will not grant them any more money than the statute mandates. Malibu Media is awarded statutory damages of $750 for each of four infringed works, totaling $3,000.

### 2.  Injunctive Relief

Malibu Media requests a permanent injunction against Mr. Nowobilski from continuing to infringe its works and an order that Nowobilski delete all digital media files relating to Malibu Media's works. (MDJ Br. 11)

"[T]he Copyright Act provides that courts 'may' grant injunctive relief 'on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.'" *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392, 126 S. Ct. 1837 (2006) (quoting 17 U.S.C. § 502(a)). A plaintiff seeking a permanent injunction must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* at 391; *accord Coffelt v. Fawkes*, 765 F.3d 197, 201 (3d Cir. 2014).

Malibu Media has demonstrated all four prongs of the test. They have suffered copyright infringement of their works that will continue until Nowobilski purges the infringing works from his possession. Further, there are no hardships to Nowobilski in preventing him from committing copyright infringement. Finally, preventing copyright infringement would not disserve the public interest. Thus, a permanent injunction is proper and Nowobilski is ordered to destroy all unauthorized copies of Malibu Media's works in his possession.

### 3.   Attorney's Fees and Costs

Malibu Media requests an award of attorney's fees and costs of $1,657. (MDJ Br. 14) $400 of that amount is for a filing fee and $75 is for process server fees. (Declaration of Patrick J. Cerillo ("Cerillo Decl.") ¶ 8 (ECF No. 15–5)) The remaining $1,182 consists of 1.9 attorney hours billed at $300 per hour and 7.2 paralegal hours billed at $85 per hour. (Cerillo Decl. ¶ 9)

The Copyright Act allows the prevailing party to recover costs and attorney's fees at the court's discretion. 17 U.S.C. § 505. Some courts addressing Malibu Media as a plaintiff have pointed out that their "case is one of hundreds filed ... across the country, using nearly identical complaints and motions for default judgment" and reduced or denied the requested attorney's fees. *Schelling*, 31 F. Supp. 3d at 912 (reducing attorney's fees to $555); *see also Malibu Media, LLC v. Lara Dupuis*, Civ No. 13–11435 (ECF No. 14) (E.D. Mich. Oct. 17, 2013); *Malibu Media, LLC v. Johnson*, Civ No. 12–1117, 2013 WL 3895265, at *2 (S.D. Ind. July 29, 2013).

Reviewing the itemized bill of plaintiff's counsel, I note two catchall miscellaneous categories, one each for the attorney and the paralegals. The itemized statement block-bills 1 hour of "Case management, managing paralegals and reviewing approximately 10 e-mails; miscellaneous" by the attorney, over a 9-month period. It also lists 2.1 hours of "Case tracking and management; miscellaneous" by paralegals, over the same 9-month period. It appears that this itemized chart, down to the tenths of hours and descriptions of the work, was simply copied from another case. Except for the dates, it is precisely identical to one filed by a different attorney in an entirely different *Malibu Media* case in Indiana. *See* Declaration of Paul J. Nicoletti, *Malibu Media, LLC v. Saari*, Civ No. 14–860 (ECF No. 33-4 ¶ 9) (S.D. Ind. July 14, 2015). The only possibilities seem to be (a) copying or (b) a truly remarkable coincidence. There is reason to be skeptical that these numbers reflect anything that happened in this case.

I will not—in this case—act on that skepticism and call the attorney in to testify under oath. Further such coincidences may strain credulity to the

13

breaking point and persuade me to do so. For now, I will disallow the block-billing and reduce the request by 1 hour of attorney time and 2.1 hours of paralegal time, totaling $478.50. *See Malibu Media, LLC v. Saari*, Civ No. 14–860, 2015 WL 5056887, at *4 (S.D. Ind. Aug. 26, 2015). Attorney's fees of $703.50 are awarded. With costs of $475, the total is $1,178.50.

## III.    CONCLUSION

The motion for default judgment is **GRANTED** in part and **DENIED** in part. Statutory damages of $3,000 are awarded as well as attorney's fees and costs of $1,178.50 for a total of $4,178.50. Nowobilski is enjoined from infringing Malibu Media's copyrights and ordered to destroy all unauthorized copies of Malibu Media's works in his possession. An appropriate order will issue.

Dated: July 26, 2016

**Hon. Kevin McNulty**
**United States District Judge**

14